WILLIAM WIENER, TRANSFEREE OF TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16343. Promulgated May 4, 1949.

*Edgar W. Pugh, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

702

704

OPINION.

Johnson, *Judge*: Petitioner assails the determination that he is liable as a transferee for deficiencies in taxes, penalties, and interest determined against the corporation for 1934. Although he pleaded guilty and was sentenced to jail for filing a false and fraudulent 1934 return for the corporation, he now contends that the return was not fraudulent, but correct. As proof he introduced the testimony of an accountant who claimed to have computed 1934 income on the basis of checks, receipts, invoices, and statements of manufacturers who supplied the corporation with merchandise. This witness presented no computation, but asserted his conviction that the reported-income of $149.77 was actually overstated. We find the testimony of petitioner's former bookkeeper and the revenue agent more persuasive. False records were kept and used in preparing the return, and the increase in income determined by respondent reflects receipts for which there was no accounting and the elimination of recorded purchases which could not be explained. Petitioner professed inability to remember any second set of books, and throughout his testimony declared ignorance of other matters of which we can not believe he was unaware. We hold that the corporation's 1934 return was false and fraudulent and that the presumption of correctness attaching to the Commissioner's determination of the deficiency in tax has not been overcome.

Petitioner assigns as a second error the determination of transferee liability against Alice Wiener. Under the view that the 1934 return was not fraudulent, he pleads that the statute of limitations bars assessment agains the corporation and its transferee, and in the alternative that Alice Wiener's liability does not exceed $1,400 since, according to the accountant's testimony the net value of the assets received by her from Stetson Shirt Shops, Inc., in 1938 did not exceed that amount. He calls attention to the fact that Stetson's Men's Wear, Inc., also transferred assets to her. This Court has already decided in Docket No. 8660 that Alice Wiener is liable as transferee for the full amounts assessed against Stetson Shirt Shops, Inc., for 1934, and the proffered oral estimate of the amount received by her is unconvincing.

Petitioner's principal contention is that respondent has not met the burden placed on him of proving that petitioner is a transferee of any assets. Correctly stating that respondent's determination rests solely on petitioner's sale of the lease, petitioner reviews the sequence of contracts, negotiations, and transactions relating to the St. Luke's property, and would have us conclude that he "received an assignment of the lease here in question in 1937"; that it was not among the assets which the corporation transferred to Alice Wiener in 1938; that she never assigned it to him, and hence the consideration which he received

from Manteris for it was derived from property which he had held for years. He cites in substantiation the various subleases and other documents in which only his name appears as lessee or as sublessor.

In our findings we have set forth the shifts and contradictory positions taken by petitioner in respect of the leased property, and observe that these inconsistencies merely tend to prove a devious and crafty policy. But the officials of St. Luke's, in treating Alice Wiener as lessee and refusing petitioner's request to recognize an assignment to him, leave us in no doubt about the true owner. The lease which ended August 1, 1944, belonged to Alice Wiener, but, contrary to petitioner's assumption, no property rights in that contract are here involved. It expired on August 1, 1944, and a new lease began. That lease, signed on April 8, 1944, had its origin in the option which St. Luke's granted to Alice Wiener in June 1942 and which it affirmatively refused to grant to petitioner. All property right in it was the wife's, although petitioner's name was joined as lessee and Alice Wiener executed an undated document purporting to convey her interest in it to petitioner—a conveyance which St. Luke's refused to recognize. When, therefore, petitioner assigned the lease to Manteris, he transferred his wife's property, and the proceeds of that assignment were the proceeds from a disposition of her property.

Over a year before petitioner contracted to make this assignment on July 16, 1946, the Commissioner had determined Alice Wiener's liability for the corporation's 1934 taxes and additions thereto, a determination which this Court sustained. Alice Wiener paid nothing, however, and the Commissioner found nothing on which to levy. Learning of the lease assignment, he first gave notice to Manteris of the assessment against Alice Wiener. When Manteris informed the agent that the note was payable to petitioner, not to her, assessment was made against petitioner, and petitioner was advised by the notice, on which this proceeding is based, that liability had been determined against him as a transferee of Alice Wiener.

We think it clear that petitioner was a transferee, and that his role of assignor in the transaction with Manteris was a fraudulent attempt by him and his wife to frustrate collection of the taxes and penalties here in controversy. Both were aware that the lease was property of the wife. This is manifest from petitioner's request that St. Luke's recognize assignment of the option to him; later, that it make the lease to him; from the undated assignment signed by the wife despite St. Luke's refusal of his requests; from recitation of the assignment in the contract with Manteris; and from the wife's endorsement on the check which Manteris had made payable to him. At the trial petitioner at first could not remember any check, saying that he had received the $4,000 in cash and placed it in a vault in Florida; he could

not remember where the vault was located. Confronted with the check, he doubted that the wife's endorsement on it was her signature. In October 1946 he asked Manteris to pay off the notes immediately, but Manteris was unable to do so.

We perceive in this conduct a studied attempt to hinder, delay, and defraud the Commissioner in the collection of taxes. As a creditor, the United States is entitled to the same rights that a private citizen enjoys in pursuing property fraudulently conveyed, *Zimmern* v. *United States*, 87 Fed. (2d) 179; certiorari denied, 300 U. S. 671; *United States* v. *Haar* (C. C. A., 5th Cir.), 27 Fed. (2d) 250; *United States* v. *Phillips* (Dist. Ct. Ga.), 57 Fed. Supp. 1006, and section 311 of the Internal Revenue Code provides the Commissioner with a summary method of enforcing those rights as defined by existing laws. *Phillips* v. *Commissioner*, 283 U. S. 589; *Commissioner* v. *Southern Bell Telephone & Telegraph Co.* (C. C. A., 6th Cir.), 102 Fed. (2d) 397. The laws of Michigan, Title 26, chapter 261, Michigan Statutes Annotated, provide by section 26.887 that:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

And by section 26.889 that:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may * * *:
>
> *    *    *    *    *    *    *
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

While respondent here levied upon a note, that note represented a conversion of the property conveyed, and is equally subject to levy under section 26.891, which provides that:

> In any case not provided for in this act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause shall govern.

Petitioner argues that respondent has not shown the wife's insolvency after the transfer and that assessment of the corporation's liability had not been made against her when the transfer occurred. The record shows, however, that the wife had paid nothing and the respondent had found nothing on which to levy except the notes. But in any event we find the transfer fraudulent, and hence within the scope of section 26.889. Transactions between family members to the detriment of creditors invite special scrutiny, and nothing shown by petitioner would lead, under Michigan decisions, to any other conclusion than a fraudulent intent. Cf. *Bentley* v. *Caille*, 289 Mich. 74; 286 N. W. 163, and cases cited. The date of the assessment against the

wife, which was after the transfer, lacks any decisive significance. Respondent's cause of action stems from the corporation's transfer of all assets to Alice Wiener in 1938, and, as said in *Farrell* v. *Paulus*, 309 Mich. 441; 15 N. W. (2d) 700:

* * * The status of creditor is determined as of the date when plaintiff's cause of action arose, not the date when judgment was obtained or entered. *Hanna* v. *Hurley*, 162 Mich. 601, 127 N. W. 710; *Ashbaugh* v. *Sauer*, 268 Mich. 467, 256 N. W. 486.

Reviewed by the Court.

*Decision will be entered for the respondent.*